GLENN and OLWELL *v.* MARY A. DOYLE and others.

October Term, 1876.

PRIORITY OF EQUITIES BETWEEN A SURETY AND AN ASSIGNEE FOR CRED-
    ITORS.—In a contest over a fund between the surety of the creditor who
    had borrowed the fund pending the litigation instituted by him to subject
    it to the satisfaction of his debt, which litigation was prosecuted to a suc-
    cessful end, and an assignee under a general assignment afterwards made
    by the creditor, pending the same litigation, for the benefit of creditors,
    the surety was held to have the better right.

*M. B. Howell*, for complainants.
*A. G. Merritt*, for defendants.

THE CHANCELLOR:—On July 23, 1866, Patrick Doyle
filed his bill in this court, as a creditor of certain persons
made defendants, to attach and subject to the satisfaction
of his debt a large amount of coal, and perhaps other prop-
erty, then owned by the defendants; and such proceedings
were had in the cause that, on June 7, 1868, the executor
of the complainant—he having in the meantime died tes-
tate—recovered a judgment for largely more than the value
of the property attached, and a decree to apply the proceeds
of the sale of the property attached, it having been sold
pending the litigation, to the payment of the debt sued on,
including "funds in the hands of the clerk and master
arising from the sale of the property attached." The prop-
erty attached having been sold under orders of the court,
the proceeds of sale were directed to be loaned out by the
master. On February 19, 1867, the master loaned to the
complainant, Doyle, a portion of these funds, taking his
notes with complainant Olwell as surety for the amount.
On February 27, 1867, he loaned the complainant a further
sum, taking his note with complainant Glenn as his surety.
They were induced to become the sureties of Doyle by his
assurances that the fund would eventually be decreed to him
in the cause, and that the form of a loan was resorted to in

order to enable him to obtain the money in advance of the decree. On March 19, 1867, Doyle made an assignment of property in trust for the benefit of his creditors, in which he conveyed to the trustee the claims on which his original bill was founded, and " all the interest he had acquired to the property and funds attached." The trustee was not made a party to the suit, by supplemental bill or otherwise, but the execution of the assignment was suggested to the court on the rendition of the final decree, by the complainant, and he was directed to apply the funds recovered to the debts thereby secured. On January 19, 1871, the clerk and master took judgment by motion in the cause on the loan-notes, without notice to the sureties. This bill is filed by the sureties against Doyle's executor, the trustee under the assignment of Doyle, and the only beneficiary now interested in the execution of the trust. Doyle's estate is insolvent, and the question is whether the loss thus occasioned, to the extent of the amount due and unpaid on the loan-notes, shall fall upon the sureties of Doyle, the complainants, or upon the beneficiary claiming under the trust assignment?

The loans to Doyle, and the notes given to secure these loans, were made prior to the execution of the trust assignment. The complainants became the sureties of Doyle for money actually advanced to him at the time, whereas the trust-deed was a voluntary assignment made by Doyle to secure preëxisting creditors. Natural justice would say that the sureties, as they were first in point of time in acquiring their rights, so they have the superior equity over a mere voluntary assignee. Nor is there any principle of positive law which stands in the way of carrying out the dictates of natural justice. For, the argument of the learned counsel for the defendant concedes that the assignee takes the shoes of the assignor, and can occupy no better position than he does. And this means, that if any person has a lien upon or equity in the fund or property assigned, which

would be good against the assignor, such lien or equity would be equally good against the voluntary assignee. The rule is not limited to the rights of a debtor of the assignor, as suggested, but, on the contrary, applies to the creditor of the assignor having a lien or equity. The case in our books in which the doctrine was most clearly brought out and distinctly applied was precisely of this character, viz., *Brown* v. *Vanlier*, 7 Humph. 239. There, the vendor of land, who had made a conveyance in fee without reserving any lien, set up his equity as a creditor of the vendee for unpaid purchase-money against the assignee of the vendee under a voluntary assignment for the benefit of creditors, and obtained a decree declaring his right to priority of satisfaction. It is true, subsequent cases in our books have thrown some doubt over the correctness of that decision to the extent to which it was there carried, but not to the principle upon which it was based. The principle itself is the settled law of this state. *Ganaway* v. *Tarpley*, 1 Coldw. 572; *Turner* v. *Pettigrew*, 6 Humph. 438; *Sandford* v. *Weden*, 2 Heisk. 71. Doyle received the funds which were loaned to him in trust for his sureties, if he should be subsequently declared entitled to the funds, and could make no voluntary assignment of his interest in the litigation free from the trust. The assignee under such an assignment would stand in his shoes, and be subject to the same equities.

The question came before me at the April term, 1875, in the case of *Trabue & Lucas* v. *Bankhead*, 2 Tenn. Ch. 412, where the facts presented a much stronger case in favor of the assignee. There Bankhead, as the holder of a promissory note, attached certain tobacco as the property of his debtor. The tobacco was sold, and the proceeds were paid into court, and ordered to be loaned, the notes to be held subject to the decision of the cause. The complainants, Trabue & Lucas, sought to reach the same property, and the funds were retained to abide the event of that suit also. A portion of the money was loaned to Bankhead, who gave

a, note with G. M. Fogg as his surety.. In the end, Bankhead compromised with Trabue & Lucas, and was declared entitled to the funds. Previous to the loan of the money to him, Bankhead had assigned the claim on which his suit was based, by assignment of his lawyer's receipt, to one B. D. Harris. Bankhead became insolvent, and Harris having died, his administratrix intervened in the suit, and sought to recover judgment on the note for the money loaned against the surety. That case differed from the one before us in the fact that the assignment of Bankhead to Harris was made *before* the money was loaned, and for a money consideration passing at the time. The surety in that case, as in this, went on the note under the belief that the fund would belong to the principal if he succeeded in the suit. I held, upon full consideration, that inasmuch as Bankhead was the only party shown by the record to be interested, and as Harris had not intervened, either by supplemental bill or by notice, to assert and perfect his right, before the money was loaned, the surety had the prior and better equity. The rights of the administratrix, when she did intervene, were only such as Bankhead himself was then entitled to assert as against the parties and *quasi*-parties to the suit. If he had received the money from the clerk, with or without an order of court, he could not make the clerk pay it again; neither could his assignee, who had permitted him to act as the sole owner. He, having received the money, and induced a third person to become surety for him, could not, of course, make his own surety liable for the money; neither could his assignee. The clerk would have no right to collect the money from the surety in order to pay it to the principal, nor to the assignee, who had failed to perfect his right to the fund before the money was received by the plaintiff of record. And see *Atkinson* v. *Cooper*, 2 Humph. 361. How much stronger is the surety's position who becomes liable before an assignment, and when the assignee is a mere volunteer? The latter takes the fund

assigned *cum onere*.  As between Doyle and his original
debtors, the latter, upon the final recovery, could·claim a.
credit on the debt against them for the money loaned from
the date of the loan, and an assignee of the debt would
take it subject to the same credit.

I am clearly of opinion that the complainants are entitled
to a perpetual injunction, with costs.